FILED
STATESVILLE, N.C.

2002 NOV 20 AM 10: 36

U.S. DISTRICT COURT
W. DIST. OF N.C.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

Civil Action No. 5:02CV146-V

ELIZABETH BENFIELD SHERRILL,

    Plaintiff,

v.

TOWN OF MOORESVILLE, a municipal corporation; AL JONES, Individually and as Mayor of the Town of Mooresville; RICHARD A. McLEAN, Individually and as Town Manager of the Town of Mooresville; JANET POPE, individually and as the Town Clerk for the Town of Mooresville; FRANK OWENS, individually and as a Commissioner of the Town of Mooresville; ALICE LEE, Individually and as a Commissioner of the Town of Mooresville; S. MITCHELL MACK, individually and as a Commissioner of the Town of Mooresville; DANNY BEAVER, individually and as a Commissioner of the Town of Mooresville; FRANKLIN CAMPBELL, individually and as a Commissioner of the Town of Mooresville; WAYNE EUGENE BRANNON, JR. individually and as a Commissioner of the Town of Mooresville;

    Defendants.

PLAINTIFF, Elizabeth Benfield Sherrill, ("Sherrill" or "plaintiff"), by her undersigned attorneys, for her Complaint alleges:

## INTRODUCTION

1. This is a Civil Rights Action brought pursuant to 42 U.S.C. § 1983 and the First Amendment of the Constitution of the United States which is made applicable to the States through the Fourteenth Amendment of the Constitution of the United States. This action challenges the constitutionality of a restrictive policy and/or actions of the Town of Mooresville (hereinafter "the Town" or "the Town of Mooresville") and the

defendants which have restricted the plaintiff's speech and have denied her the equal protection of the laws in exercising her First Amendment rights. Plaintiff seeks compensatory damages, punitive damages, attorneys' fees and a declaratory judgment that the Town's restrictive policy and/or actions violate the First Amendment of the United States Constitution.

2. Upon information and belief, the Town does not have a written policy with regard to a member of the public speaking at the Town Board's monthly meeting. However, the Town's website states that, "The Board meets on the first Monday of each month at 7:00 p.m. in the Municipal Courtroom, 413 North Main Street. The public *is invited* and urged to attend all Town Board Meetings to ensure open communications between them and the elected representatives. The agenda is usually arranged so that public hearings on matters of general interest are held early in the meeting and citizens' views, comments and inquiries are heard." *Mooresville, NC Welcome to Race City USA* (visited November 15, 2002) http://www.ci.mooresville.nc.us/about.htm A copy of a pertinent portion of the website is attached hereto as Exhibit A and incorporated by reference herein.

3. Upon information and belief, before entering their offices, the Mayor and each Commissioner shall take, subscribe to and have entered upon the minutes of the Board the following oaths of office: "I..........do solemnly swear (or affirm) that I will support the Constitution and laws of the United States, and the Constitution and laws of North Carolina not inconsistent therewith, and that I will faithfully discharge the duties of my office as.........., so help me God." N.C. Const. Art. VI, § 7.

4. As is detailed hereinbelow, the defendants have engaged in a policy and/or actions to restrict Public Speech at a Public Forum based upon the content of the speech in violation of the First Amendment of the United States Constitution. U.S. Const. amend. XIV, § 2 (2002). These actions by the defendants were taken directly against the plaintiff and have resulted in an unconstitutional restriction and denial of the plaintiff's First Amendment right to free speech.

## JURISDICTION

5. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 to redress the deprivation of plaintiff's First Amendment right to freedom of speech by the defendants under the alleged authority of the Town of Mooresville.

6. This court has jurisdiction to hear this case pursuant to 28 U.S.C. §1331 and 28 U.S.C. § 1343(3) which confer original jurisdiction on federal district courts to hear suits alleging the violation of rights and privileges under the United States Constitution.

## PARTIES

7. The plaintiff is a citizen and resident of Iredell County, North Carolina.

2

8. The defendant, the Town of Mooresville, is a municipal corporation, organized and existing under the laws of the State of North Carolina.

9. The defendant Al Jones (hereinafter referred to as "Al Jones") at all relevant times herein alleged was and is the elected Mayor of the Town of Mooresville. Al Jones is a defendant in this action in his capacity as the Mayor of the Town of Mooresville and in his individual capacity.

10. The defendant Richard A. McLean (hereinafter referred to as "McLean") at all relevant times herein alleged was and is the appointed Town Manager of the Town of Mooresville. McLean is a defendant in this action in his capacity as the Town Manager of the Town of Mooresville and in his individual capacity.

11. The defendant Janet Pope (hereinafter referred to as "Pope") at all relevant times herein alleged was and is the appointed Town Clerk of the Town of Mooresville. Pope is a defendant in this action in her capacity as the Town Clerk of the Town of Mooresville and in her individual capacity.

12. The defendant S. Mitchell Mack (hereinafter referred to as "Mack") at all relevant times herein alleged was and is an elected Town Commissioner for the Town of Mooresville. Mack is a defendant in this action in his capacity as a Town Commissioner of the Town of Mooresville and in his individual capacity.

13. The defendant Wayne Eugene Brannon, Jr. (hereinafter referred to as "Brannon") at all relevant times herein alleged was and is an elected Town Commissioner for the Town of Mooresville. Brannon is a defendant in this action in his capacity as a Town Commissioner of the Town of Mooresville and in his individual capacity.

14. The defendant Franklin Campbell (hereinafter referred to as "Campbell") at all relevant times herein alleged was and is an elected Town Commissioner for the Town of Mooresville. Campbell is a defendant in this action in his capacity as a Town Commissioner of the Town of Mooresville and in his individual capacity.

15. The defendant Frank Owens (hereinafter referred to as "Owens") at all relevant times herein alleged was and is an elected Town Commissioner for the Town of Mooresville. Owens is a defendant in this action in his capacity as a Town Commissioner of the Town of Mooresville and in his individual capacity.

16. The defendant Danny F. Beaver (hereinafter referred to as "Beaver") at all relevant times herein alleged was and is an elected Town Commissioner for the Town of Mooresville. Beaver is a defendant in this action in his capacity as a Town Commissioner of the Town of Mooresville and in his individual capacity.

17. The defendant Alice Lee (hereinafter referred to as "Lee") at all relevant times herein alleged was and is an elected Town Commissioner for the Town of

3

Mooresville. Lee is a defendant in this action in her capacity as a Town Commissioner of the Town of Mooresville and in her individual capacity.

18. The Town Commissioners named herein are sometimes collectively referred to herein as the "Town Commissioners".

## STATEMENT OF THE FACTS

19. The previous allegations of this complaint are realleged and incorporated by reference herein.

20. The Town of Mooresville is governed by the Mayor and Town Commissioners. Town Manager McLean and Town Clerk Pope carry out actions at the direction of and on behalf of the Mayor and Town Commissioners. Town Clerk Pope carries out actions at the direction of McLean. The actions of Pope as alleged herein are to be imputed to McLean. The actions of Pope and/or McLean as herein alleged are to be imputed to the Town Commissioners.

21. The Mayor and the Town Commissioners convene on the first Monday of every month (unless there is a conflict with a holiday) for the purpose of holding a public meeting to make decisions regarding the governance of the Town of Mooresville. McLean and Pope are customarily present at these meetings.

22. Said meetings (the "Town Board meetings") are held at 7:00 p.m. at the Mooresville Town Hall located at 413 North Main Street in Mooresville.

23. Attached hereto and incorporated by reference herein as Exhibit B is a newspaper article from the "Iredell Neighbors" section of The Charlotte Observer (dated March 24, 2002) wherein the procedure for speaking at a Town Board meeting is outlined. Said procedure is stated as follows: "To appear before the board of commissioners: Notify the city manager's office by noon the Monday before the meeting date. Board meets the first Monday of each month."

24. The Town of Mooresville, upon information and belief, drafted and/or approved the text that was printed in the Iredell Neighbors referred to in paragraph 24 above. This text has, upon information and belief, run several times in the Iredell Neighbors and/or other publications and has not been contradicted by the Town of Mooresville.

25. The plaintiff is a customer of the Town of Mooresville Utility Department. The plaintiff, though she lives just outside of the city limits of the Town of Mooresville, receives her sewer service from the Town of Mooresville. She (like several other customers of the Town of Mooresville Utility Department who are outside of the Town of Mooresville) pays double the "in-town" rate for her sewer service.

4

26. In the summer of 2002, the Town of Mooresville instituted a rate increase for "in-town" and "out-of-town" utility customers.

27. This rate increase disproportionately affected customers such as the plaintiff in that the base amount of the rate increase was automatically doubled for said customers.

28. The plaintiff and other residents of her subdivision, Meadowbrook (who are similarly situated with the plaintiff) were unhappy about the rate increase enacted by the Town of Mooresville.

29. The plaintiff embarked upon a course of action whereby she methodically and meticulously accumulated information regarding the operation of the Town of Mooresville and in particular regarding the operation of the utilities department of the Town of Mooresville.

30. The plaintiff learned that she was entitled to sign up to speak before the Town Board at Town Board meetings pursuant to the open forum policy established by the Town of Mooresville.

31. The Town of Mooresville, upon information and belief, has established deadlines by which a member of the public must notify the Town of that person's desire to speak before the Town Board meeting.

32. The plaintiff attempted to sign up for the Town Board meeting that was scheduled for August 5, 2002 but apparently did not do so on or before the deadline and the plaintiff was thus unable to address the Town Board at its August 5, 2002 Town Board meeting.

33. The plaintiff did sign up in time for the deadline for speaking before the Town Board at its meeting on September 9, 2002.

34. When the plaintiff signed up to speak at the September 9, 2002 Town Board meeting, no one inquired of the plaintiff as to the subject matter of her talk. However, the plaintiff volunteered to Pope, the Town Clerk, that she would be speaking regarding the sewer rates for out-of-town or "outside" customers.

35. The plaintiff appeared and spoke at the September 9, 2002 Town Board meeting. She was allowed five minutes to speak and the plaintiff gave her position on behalf of herself and other residents of Meadowbrook regarding the sewer rates for outside customers.

36. The Town Board listened to the plaintiff's position but took no action regarding her comments. The plaintiff has now obtained a copy of the minutes of the September 9, 2002 Town Board meeting. A copy of the pertinent portion of these minutes is attached hereto as Exhibit C and incorporated by reference herein. The

5

minutes state in some detail the comments that the plaintiff made at the September 9, 2002 Town Board meeting.

37. Subsequent to the September 9, 2002 Town Board meeting, the plaintiff undertook to begin an investigation into the practices and policies of the Town of Mooresville in regard to water, sewer and other matters.

38. During this time, it was reported in the local newspaper, the Mooresville Tribune, that a local development known as Morrison Plantation had received approximately twenty-one million (21,000,000) gallons of water from the Town of Mooresville without paying for the water. The water bill was in excess of $29,000.00. It was reported that neither Morrison Plantation nor the Town of Mooresville knew how Morrison Plantation had obtained a Town of Mooresville water meter without the meter being properly registered or checked.

39. The plaintiff became concerned about what she perceived as the ability of the Town of Mooresville to treat different utility customers in different manners depending upon their apparent influence and economic standing within the community.

40. The plaintiff began to investigate the relationship of Morrison Plantation with the Town of Mooresville. She also began to investigate other relationships involving the Town of Mooresville, the nature of which caused concern to the plaintiff.

41. The plaintiff timely signed up to speak at the October 7, 2002 Town Board meeting. The plaintiff's husband, Steve Sherrill, also timely signed up to speak at the October 7, 2002 Town Board meeting. At the time they signed up, neither the plaintiff nor her husband was asked about the topic of their comments and neither gave the planned topic of their comments.

42. Prior to the October 7, 2002 Town Board meeting, the plaintiff had initiated email correspondence with various officials of the Town of Mooresville for the purpose of obtaining public information regarding the operations of the Town of Mooresville.

43. The plaintiff spoke at the October 7, 2002 Town Board meeting.

44. After the plaintiff had used her allotted five minutes of speaking time, the Board called the plaintiff's husband who deferred his five minutes to plaintiff. The Mayor and the Town Board allowed plaintiff to use her husband's five minutes to speak.

45. At the October 7, 2002, Town Board meeting, the plaintiff pointed out to the Town Board various double standards, inequities and conflicts of interest that she perceived in the operation of the Town of Mooresville. For example, the plaintiff made inquiry about the Morrison Plantation situation. The plaintiff also handed out a packet of papers to each board member. This packet included information that the plaintiff contended was important to the issue involving her subdivision, Meadowbrook.

6

46. At one point, one commissioner asked the plaintiff to "stick to the subject" (or a statement to similar effect). The plaintiff has since obtained the minutes to this meeting and they reflect very little of the plaintiff's comments or the responses of the board.

47. At the October 7, 2002 Town Board meeting, the defendants were visibly uncomfortable and unhappy that the plaintiff had made issue of what she perceived as double standards, conflicts of interest and lack of policy in various areas of the government of the Town of Mooresville.

48. The minutes from the Town Board meeting of October 7, 2002 fail to reflect in any detail the comments by the plaintiff and others. A copy of the pertinent portion of said minutes are attached hereto as Exhibit D and incorporated by reference herein. Said minutes simply state as follows: "Beth Sherrill expressed her concern about the double rates charged to residents outside the town limits for sewer service. (attachment included)" The referenced attachment is the packet that the plaintiff handed to Town Board members on October 7, 2002.

49. Subsequent to the October 7, 2002 Town Board meeting, the plaintiff continued an email colloquy with various officials of the Town of Mooresville.

50. Around this time, it had been reported in the Mooresville Tribune that the Town of Mooresville intended to allow Morrison Plantation to pay its $29,000.00 water bill from a "credit" being held by the Town. The plaintiff undertook to determine the true nature and purpose of the credit by requesting information from the Town.

51. The plaintiff is employed by Davidson College where she has worked as a dedicated employee for twenty (20) years.

52. The plaintiff was sending her emails to the Town of Mooresville from her desk at Davidson College.

53. The defendants began to bring irrelevant issues in to the email exchange.

54. On or about October 8, 2002, Town Clerk Pope sent plaintiff an email response to plaintiff's inquiry regarding how Mooresville spends its citizen's tax funds, which stated, *inter alia*, as follows: "That budget tells you exactly how the money is spent. I'm sure that it's very similar to the budget of Davidson College." Attached hereto as Exhibit E and incorporated by reference herein is a copy of said email from the Town Clerk Pope to the plaintiff making reference to Davidson College.

55. On the morning of October 9, 2002, the plaintiff sent an email to Commissioner Mack and the other commissioners asking them to take the time to read the information that she had given to the commissioners at the October 7, 2002 board meeting. A copy of said email is attached hereto as Exhibit F and is incorporated by reference herein.

7

56. On or about October 9, 2002, Commissioner Mack sent plaintiff an email response to plaintiff's email of that morning. A copy of said email is shown as the bottom portion of Exhibit G which is attached hereto and incorporated by reference herein.

57. On or about October 9, 2002, the plaintiff responded to Commissioner Mack via email. A copy of said email is shown on the top portion of Exhibit G.

58. The plaintiff copied Mack's email and her email response (top portion of Exhibit G) to all of the defendants.

59. At various times during the course of her email and telephone correspondence with the Town, the plaintiff dealt with some of the defendants and with other employees of the Town. The actions of all individuals associated with the Town with whom the plaintiff was corresponding and communicating were taken by these individuals in their official capacity as representatives of the Town of Mooresville, and the statements and actions of these individuals are to be imputed to all defendants herein. Upon information and belief, said actions were taken, if not with the actual knowledge of all defendants, then at least with the assent and implied support of all defendants.

60. The plaintiff requested several documents from the Town of Mooresville, including a copy of the original contract between the Town of Mooresville and Morrison Plantation regarding the extension of water and sewer lines by the Town to Morrison Plantation. A copy of said contract is attached hereto as Exhibit H and is incorporated by reference herein and is referred to herein as "the Morrison contract".

61. The plaintiff learned through a reading of the Morrison contract that it provided for a credit to be placed with the Town of Mooresville by Morrison Plantation to insure that Morrison Plantation would pay for at least some portion of the total cost of extending water and sewer lines to Morrison Plantation.

62. It was apparent to the plaintiff that the Morrison contract did not allow the credit to be used to pay a water bill of Morrison Plantation, a possibility that had been previously reported in the media.

63. The plaintiff began to inquire more deeply into the circumstances surrounding Morrison Plantation and what the plaintiff perceived to be double standards and lack of policies regarding water and sewer in the Town of Mooresville. Plaintiff's inquiry directly impacted the situation regarding her sewer bill because the defendants had indicated to the plaintiff an inability or unwillingness to modify the policy regarding the sewer bills of the plaintiff and similarly situated customers.

64. As the plaintiff inquired more deeply of the Town of Mooresville, the Town's response became more and more terse and discouraging to the plaintiff. A copy

8

of an email from Town Clerk Pope to the plaintiff is attached hereto as Exhibit I and incorporated by reference herein.

65. In an email dated October 24, 2002, Town Engineer Carson Fisher asked the plaintiff, "I have a question of you; What is your motive in asking all these questions about this project (*Morrison Plantation*)? What does it have to do with your questions about Meadowbrook? While we are obligated to provide information in compliance with the State Statutes, I feel that we should have some indication what [sic] the information is being used for and who you are supplying it to, particularly when the information being requested doesn't necessarily relate to your expressed concerns." A copy of said email is attached hereto as Exhibit J and is incorporated by reference herein. In the context of her previous correspondence with the Town and the attitudes of the defendants at the October 7, 2002, meeting, the plaintiff understood the email from Town Engineer Fisher to be a further effort by the defendants to discourage the plaintiff from pursuing her line of questioning regarding various perceived double standards and lack of policy in the Town of Mooresville.

66. The Town of Mooresville produced for the plaintiff a copy of its Utility Extension Policy. This policy is attached hereto as Exhibit K and incorporated by reference herein. The plaintiff read this policy and determined that in her opinion this policy was an open-ended agreement that gave unlimited discretion to the Town Board in matters regarding the extension of water and sewer lines (see paragraph 2.02 of the Utility Extension Policy).

67. The plaintiff continued to make inquiry regarding the equities and propriety of the town's handling of various matters.

68. By email dated October 25, 2002, the plaintiff informed Town Clerk Pope of the plaintiff's desire to speak at the November 4, 2002 Town Board meeting. It was apparent from the communications between the plaintiff and the Town during the preceding month that the plaintiff intended to speak about her sewer situation and the various double standards, conflicts of interest and general lack of policy that the plaintiff perceived to exist in the government of the Town of Mooresville. A copy of the plaintiff's email is shown on the second page of Exhibit L which is attached hereto and incorporated by reference herein.

69. On or about October 28, 2002, Town Clerk Pope responded to the plaintiff's email in which the plaintiff requested to speak as follows: "The Mayor will be out of the office until Wednesday, so I'll talk to him then to get permission for you to speak. I'll also need your topic of discussion." A copy of said email is shown at the bottom of the page of an email exchange that is attached hereto as Exhibit L and incorporated by reference herein. This correspondence was the first notice plaintiff had that the Town took the position that the Mayor had to give permission to a person to speak at the meeting and that a person's topic of discussion was also required.

70. On or about October 28, 2002, the plaintiff responded to Town Clerk Pope's requests (See Exhibit L) via email by stating that, "I would like a copy of the town policy dealing with public speakers at public town meetings in Mooresville. Do you mean to tell me that a citizen must "get a Mayors [sic] permission to speak" to the Commissioners, [sic] If this is what Mooresville practices where does that leave room for Democracy. [sic]" A copy of said email is part of Exhibit L.

71. On or about that same day, Town Clerk Pope responded to the plaintiff's email (Exhibit L) by stating that, "According to the Institute of Government's book on Open Meetings in Local Governments in North Carolina by David M. Lawrence (Sixth Edition 2002), it states that the law gives persons a right to attend and listen to the proceedings of a public body. It gives no right to address the public body or participate in its deliberations. Therefore, it still stands that the Mayor and/or Board will have to give permission for you to speak." A copy of said email is part of Exhibit L.

72. On October 28, 2002 at 2:27 p.m., the plaintiff responded to Town Clerk Pope's email (Exhibit L) as follows: "I am looking at a copy of the Iredell neighbors "under the new comers guide" [sic] beneath Mooresville leaders it says, "to appear before the board of commissioners notify the city managers office by noon the Mon. before the meeting date" [sic] I have done this in good faith. Here [sic] yet I find another double standard. I have to wonder why." The plaintiff copied this email to all six Town Commissioners. A copy of said email is part of Exhibit L.

73. On or about November 1, 2002, plaintiff sent an email to Town Clerk Pope stating as follows: "You have asked for my topic. My topic in [sic] which I wish to speak has never wavered [sic] from water and sewer in Mooresville. The points I have brought up in the past board meetings have been things in [sic] which I have found in my research while looking into the water/sewer [sic]." A copy of said email is part of Exhibit M.

74. Town Clerk Pope did not directly contact the plaintiff again before the November 4, 2002 Town Board meeting. The plaintiff had copied the recent email exchanges (Exhibit L) to reporter Michael Roessler (hereinafter "Roessler") of the Mooresville Tribune.

75. Upon information and belief, Roessler contacted Pope on Thursday, October 31, 2002 and Pope informed Roessler that the plaintiff would not be permitted to speak at the November 4, 2002 town board meeting because the plaintiff did not submit to Pope the subject of her talk and because the mayor and commissioners had decided they had heard enough from the plaintiff. Pope gave various additional reasons to Roessler and, upon information and belief, said reasons are accurately reported in Roessler's article from the November 1, 2002 edition of the Mooresville Tribune. Those reasons include, *inter alia,* as follows: "Six of the seven (town board members) really don't want to hear from her." "We've heard her twice and she doesn't stick to the subject." "It's a closed subject. It's a dead issue." "She's not a taxpayer." "If she hadn't jumped off the wagon and e-mailed everybody and made offense, maybe it

10

would have been taken care of." A copy of a website version of said article is attached hereto as Exhibit N and incorporated by reference herein. The plaintiff responded to Pope's statements in said article by telling Roessler exactly what she intended to speak about. The plaintiff's statements to Roessler were accurately reported by Roessler and all of said statements of the plaintiff are incorporated by reference as if fully set out herein.

76. The emails attached hereto as Exhibit L and Exhibit M are the only email correspondence between the plaintiff and Pope, the Town Commissioners and any representatives of the Town between October 25, 2002 and November 1, 2002.

77. The Mooresville Tribune article (Exhibit N) also stated as follows: "Mooresville's approach to public appointments at board meetings differs with the policies of other area governments. Iredell County, the City of Statesville and the Iredell-Statesville Schools do not restrict the number of times someone may address their governing boards, nor can the boards deny someone the ability to speak because the board members do not want to hear someone's comments. The Mooresville Graded School District also does not limit the number of times someone can appear before its board."

78. The Mooresville Tribune is a widely circulated newspaper in the Mooresville community and, upon information and belief, it is read consistently by all of the defendants.

79. A reasonable person who read said article (See Exhibit N) would be aware that the defendants' decision to deny the plaintiff the right to speak at the November 4, 2002, Town Board Meeting was in contradiction to other local governmental bodies' procedures. A reasonable person reading said article would also be aware of the plaintiff's intended topic of conversation. Further, said topic was apparent to the defendants through the plaintiff's email correspondence of the preceding month.

80. A reasonable person reading the article and the plaintiff's comments would understand immediately that the plaintiff felt her constitutional rights were being violated by the defendants. A reasonable person with a basic understanding of the United States Constitution would understand as of November 1, 2002 that the actions of the defendants as contemplated was in violation of the plaintiff's constitutional rights.

81. Upon information and belief, the November 1, 2002 edition of the Mooresville Tribune was printed and available at newsstands throughout Mooresville before 8:00 a.m. on the morning of Friday, November 1, 2002. This amounted to a full 83 hours before the Town Board meeting scheduled for Monday, November 4, 2002 at 7:00 p.m.

82. Upon information and belief, defendants were aware that plaintiff, at the November 4, 2002 Town Board Meeting, intended to address various perceived double

11

standards, favoritism, conflicts of interest and general lack of management policy existing in the government of the Town of Mooresville.

83. The plaintiff attended the Town Board meeting on November 4, 2002.

84. Two Mooresville police officers were present at the meeting. In the plaintiff's experience, it was unusual for more than one police officer to be present at a Town Board meeting.

85. After the prayer and the Pledge of Allegiance, the plaintiff stood to address the Board. The plaintiff arose and stated words to the following effect: "Excuse me, One nation under God indivisible with liberty and justice for all—those words mean something to me." As the plaintiff arose, Mayor Al Jones nodded his head in the direction of a police officer who quickly went across the room and positioned himself behind the plaintiff.

86. The plaintiff went on to state more or less as follows: "My name is Beth Sherrill. I was denied the right to speak at this public meeting. I would like the record to show I was denied the right to speak at this public meeting. I would like those of the board that denied me the right to speak to raise their hands." No board members raised their hands. The board members did not raise their heads to look at the plaintiff.

87. After no board members raised their hands, the plaintiff went on to state the following; "Let the record show that no one raised their hands so I would like to know why my name does not appear on the docket to speak at this public meeting."

88. Mayor Al Jones proceeded to speak into the microphone over the plaintiff and interrupted the plaintiff stating "That's enough, that's enough. Wendy, Wendy." Upon information and belief, the Mayor was referring to the new Town internal auditor who was to be introduced at the meeting. It was apparent to the plaintiff from the words and actions the Mayor and the police officer and the prior reported statements of Pope that the plaintiff was being denied her right to speak at the meeting. The plaintiff sat down and stopped talking rather than to become involved in a physical confrontation with the defendants and/or the police officer.

89. Later in the meeting of November 4, 2002, the Town Board announced that it was going to go into closed session. The plaintiff asked what had happened regarding item E on the agenda which involved revision of the agreement with Morrison Plantation. Mayor Al Jones informed the plaintiff that this had been taken care of in the consent agenda. The revision of this agreement was one of the items that the plaintiff intended to discuss before the board. The Town has now produced for the plaintiff the new agreement that it says it intends to enter into with Morrison Plantation. Said agreement speaks for itself. This agreement is attached hereto as Exhibit O and is incorporated by reference herein.

12

90. That upon information and belief, defendants knew or should have known that in denying plaintiff's request to speak, they knowingly and maliciously violated and/or showed a reckless indifference for plaintiff's First Amendment rights.

91. Upon not being allowed to speak at the November 4, 2002, meeting, the plaintiff sent another email to Town Clerk Pope on or about November 5, 2002, asking why she was not allowed to speak. The plaintiff stated, *inter alia*, "I would like to know why my name did not appear on the docket to speak last night. Also I asked in a previous email for the Town's policy on public speaking at board meetings. Please make copies of any written policies for public speaking at board meetings in Mooresville and let me know when I can pick this information up." A copy of said email is shown at the bottom of Exhibit P attached hereto and incorporated by reference herein.

92. On or about November 6, 2002, Town Clerk Pope responded to plaintiff's email by stating, *inter alia*, as follows: "The reasons for your name not being on the agenda to speak Monday night were: 1. The Majority of the Board did not wish to hear you speak. 2. You did not respond to me the subject you wanted to speak about. I am not a mind reader and you will have to give me the topic you wish to speak about each and every time you ask to be on the agenda. We do not have a written policy for speaking at Board Meetings." A copy of said email is shown on the upper part of Exhibit P.

93. Also upon being denied the right to speak at the meeting, the plaintiff sent an email to Town Manager McLean asking for a record of what transpired at the November 4, 2002 meeting. Plaintiff stated that, "Monday night [sic] 11/4 town board meeting, I requested that the 'record show I was denied the right to speak at this public meeting'. I also asked for 'a show of hands of who denied me this right.' However, my verbal requests were ignored by you, the Mayor and the Commissioners...[sic] Now, I'd like to make a written record of my request for the Minutes of the 11/4/02 (meeting) to show that I was denied the right to address the Commissioners and that I requested a show of hands of who denied me that right, and my verbal requests were ignored by you, the Mayor, the town attorney and the Commissioners. I want a copy of the minutes of the entire meeting 11/4/02." A copy of said email is the lower portion of Exhibit Q which is attached hereto and incorporated by reference herein.

94. Town Manager McLean responded to plaintiff's email (see Exhibit Q) by stating that, "Town Board Minutes are public records and you may pick up a copy from the Town Clerk when they are typed. They should be available the week before the December 2nd Board Meeting."

95. On November 6, 2002, two days after the plaintiff was not allowed to speak at the Town Board meeting, a letter from Mayor Al Jones and Town Engineer Carson Fisher was published in the Mooresville Tribune. A copy of a portion of said letter is attached hereto as Exhibit R and incorporated by reference herein. In part, said letter states as follows: "Staff and management are committed to providing our customers with the best possible product at a reasonable cost while providing the

13

necessary capital to continue to grow and evolve. We welcome comments from our customers by telephone, fax, letter or our Town Web site: www.ci.mooresville.nc.us."

## CAUSE OF ACTION PURSUANT TO 42 U.S. CODE SECTION 1983

96. The previous allegations of this complaint are realleged and incorporated by reference herein.

97. The First Amendment of the Constitution of the United States reads as follows: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I (2002).

98. The First Amendment is applicable to the States through the Fourteenth Amendment of the Constitution of the United States. The Fourteenth Amendment reads as follows: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1 (2002).

99. 42 U.S.C.S. § 1983 (2002) reads as follows: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

100. The Town of Mooresville is a "person" under the meaning of 42 U.S.C.S. § 1983 pursuant to the United States Supreme Court's decision in Monell v. Department of Social Servs., 436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978).

101. The Town Board meetings of the Town of Mooresville have been established as a "public forum" in that the Town Board regularly opens its meetings to speech by individuals.

102. The defendants by their words and actions denied the right of the plaintiff to speak at the November 4, 2002 Town Board meeting—a meeting established by the Town of Mooresville as a public forum.

103. Upon information and belief, defendants acted under the authority of the Town of Mooresville in denying plaintiff of her First Amendment rights.

104. Upon information and belief, the individual defendants also acted outside the scope of their authority under the Town of Mooresville in unconstitutionally limiting and preventing plaintiff's speech.

105. Said actions of the defendants are in violation of the plaintiff's rights as protected by the First and Fourteenth Amendments of the United States Constitution.

106. Upon information and belief, the defendants' actions in denying the plaintiff the right to speak at the November 4, 2002 Town Board meeting were based upon the anticipated content of the plaintiff's speech. The defendants were aware that the plaintiff intended to address various double standards, favoritism, conflicts of interest and general lack of management policy that the plaintiff perceived to exist in the government of the Town of Mooresville.

107. The defendants had no compelling state interest to protect in denying the plaintiff her right to speak at the November 4, 2002 town board meeting.

108. Said deprivation by the defendants of plaintiff's First Amendment rights of free speech and equal protection under the law subjects the defendants to liability for plaintiff's injuries pursuant to 42 U.S.C.S. § 1983.

109. The defendants' actions and conduct were intentional and malicious and involved a reckless indifference to plaintiff's federally protected rights availing the plaintiff to an award of punitive damages.

110. As a result of the above-described actions of the defendants, the plaintiff has suffered injuries including impairment of reputation, personal humiliation, anguish and suffering. The plaintiff has also incurred out-of-pocket losses including her loss of time caused by having to pursue this action, charges for copies, court costs, and various other expenditures.

111. 42 U.S.C.S. § 1988 states, in part, that, "In any action or proceeding to enforce a provision of sections 1977, 1977A, 1978, 1979, 1980, and 1981 of the Revised Statutes [42 USCS §§ 1981-1983, 1985, 1986], title IX of Public Law 92-318 [20 USCS §§ 1681 et seq.], the Religious Freedom Restoration Act of 1993, the Religious Land Use and Institutionalized Persons Act of 2000, title VI of the Civil Rights Act of 1964 [42 USCS §§ 2000d et seq.], or section 40302 of the Violence Against Women Act of 1994, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs," 42 USCS §1988. Thus, should plaintiff be a prevailing party, the court should in its discretion award to the plaintiff her reasonable attorney's fees incurred as part of the costs of the action.

15

112. The plaintiff seeks compensatory damages, punitive damages, costs, attorneys' fees, mandatory injunctions and a declaratory judgment that the individual defendants and/or the Town of Mooresville acted unconstitutionally by using the governmental authority of the Town of Mooresville to restrict plaintiff's speech.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff seeks the following relief:

(1) A judgment of this court declaring the defendants' actions unconstitutional under the First and Fourteenth Amendments of the United States Constitution pursuant to 42 U.S.C.S. § 1983.

(2) A mandatory injunction requiring the defendants to refrain from limiting the public's speech in established public forums pursuant to all applicable law.

(3) A mandatory injunction requiring the defendants to create a written policy that will insure the regular access of the public to a public forum before the Town Board with the only restrictions being those allowed by the First Amendment and subsequent case law and enforceable statutes.

(4) That all defendants be held jointly, severally and personally liable for all of the plaintiff's injuries, damages, costs and attorney fees.

(5) An award of compensatory damages based on plaintiff's injuries with said amount to be proven more particularly at the trial of this action.

(6) An award of punitive damages in an amount determined in the discretion of the finder of fact and to be proven more particularly at the trial of this action based upon the defendants' intentional conduct which involved a reckless indifference to plaintiff's federally protected rights.

(7) Recovery from all defendants, jointly and severally, of all costs and expenses of this action, including reasonable attorneys' fees pursuant to 42 U.S.C.S. § 1988.

(8) That said awards to plaintiff be paid by the individual defendants due to the fact that said individual defendants acted outside the scope of their legal official capacity. Alternatively, if the court should find that said individual defendants were acting within the scope of their official capacity, that said awards to plaintiff be paid by the Town of Mooresville.

(9) That this matter be tried before a jury.

(10) Such other and further relief as the court deems just and proper.

Respectfully submitted,

This the 20th day of November, 2002.

**HOMESLEY, PARKER & WINGO, PLLC**
Attorneys for the Plaintiff

By: _____
Clifton W. Homesley
330 South Main Street
Mooresville, North Carolina 28115
Telephone: (704) 664-2162
NC State Bar #: 13549

By: _____
Stacy W. Baker
330 South Main Street
Mooresville, North Carolina 28115
Telephone: (704)664-2162
NC State Bar #: 26868

17

NORTH CAROLINA

**VERIFICATION**

MECKLENBURG COUNTY

**ELIZABETH BENFIELD SHERRILL**, first being duly sworn, deposes and says:

That she is the plaintiff in the foregoing action; that she has read the attached Complaint and knows the contents thereof; that the same is true of her own knowledge, except as to those matters and things stated therein upon information and belief, and as to those, she believes them to be true.

_____
ELIZABETH BENFIELD SHERRILL

Sworn to and subscribed before me,
this 19th day of November, 2002.

_____
Notary Public

My commission expires: 4-30-07

# NOTE:

# THIS IS A PARTIALLY SCANNED DOCUMENT.

# PLEASE SEE THE CASE FILE FOR ATTACHMENTS, EXHIBITS, AFFIDAVITS OR OTHER MATERIAL WHICH HAS NOT BEEN SCANNED.